UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Ashley S.,[1] Plaintiff, v. Commissioner of the Social Security Administration, Defendant. | C/A No. 9:25-03395-CMC-MHC **REPORT AND RECOMMENDATION** |

Plaintiff Ashley S. (Plaintiff) filed the Complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Administrative Law Judge's (ALJ's) final decision denying her claim for Disability Insurance Benefits (DIB) under the Social Security Act (Act). This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). For the reasons that follow, the undersigned recommends that the ALJ's decision be reversed and remanded for further administrative proceedings.

## I. BACKGROUND[2]

Plaintiff applied for DIB on October 2, 2022, alleging disability beginning March 15, 2020. R.pp. 17, 201–11. Plaintiff's claim was denied initially and upon reconsideration, and Plaintiff then requested a hearing before an ALJ. R.pp. 17, 62–78. On December 6, 2023, Plaintiff, represented by counsel, and a vocational expert testified at a hearing held before the ALJ. R.pp. 33–61. The ALJ thereafter denied Plaintiff's claims in a decision issued on January 31, 2024,

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, because of significant privacy concerns in social security cases, federal courts refer to claimants only by their first names and last initials.

[2] Citations to the record refer to the page numbers in the Social Security Administration Record. *See* ECF No. 9.

finding that Plaintiff was not disabled from the alleged date of onset through the date last insured. R.pp. 17–26. The Appeals Council denied Plaintiff's request for review on February 26, 2025. R.pp. 1–6. This appeal followed.

Because this Court writes primarily for the parties who are familiar with the facts, the Court dispenses with a lengthy recitation of the medical history from the relevant period. To the extent specific records or information are relevant to or at issue in this case, they are addressed within the Discussion section below.

## II. APPLICABLE LAW

### A. Scope of Review

Jurisdiction of this Court is pursuant to 42 U.S.C. § 405(g). Under this section, judicial review of a final decision regarding disability benefits is limited to determining (1) whether the factual findings are supported by substantial evidence, and (2) whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). Accordingly, a reviewing court must uphold the final decision when "an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) (internal quotation marks omitted).

"Substantial evidence" is an evidentiary standard that is not high: it is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). A reviewing court does not reweigh conflicts in evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that

decision falls on the [ALJ]." *Id*. (alteration in original) (internal quotation marks and citation omitted). However, this limited review does not mean the findings of an ALJ are to be mechanically accepted, as the "statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action." *Howard v. Saul*, 408 F. Supp. 3d 721, 725–26 (D.S.C. 2019) (quoting *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969)).

**B. Social Security Disability Evaluation Process**

To be considered "disabled" within the meaning of the Social Security Act, a claimant must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423. The Social Security Administration established a five-step sequential procedure to evaluate whether an individual is disabled for purposes of receiving benefits. *See* 20 C.F.R. § 404.1520; *see also Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (outlining the questions asked in the five-step procedure). The burden rests with the claimant to make the necessary showings at each of the first four steps to prove disability. *Mascio*, 780 F.3d at 634–35. If the claimant fails to carry her burden, she is found not disabled. *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). If the claimant is successful at each of the first four steps, the burden shifts to the Commissioner at step five. *Id*.

At the first step, the ALJ must determine whether the claimant has engaged in substantial gainful activity since her alleged disability onset date. 20 C.F.R. § 404.1520(b). At step two, the ALJ determines whether the claimant has an impairment or combination of impairments that meet the regulations' severity and duration requirements. *Id.* § 404.1520(c). At step three, the ALJ considers whether the severe impairment meets the criteria of an impairment listed in Appendix 1

of 20 C.F.R. part 404, subpart P (the "Listings") or is equal to a listed impairment. If so, the claimant is automatically eligible for benefits; if not, before moving on to step four, the ALJ assesses the claimant's residual functional capacity (RFC). *Id.* § 404.1520(d), (e); *Lewis*, 858 F.3d at 861. The RFC is "the most the claimant can still do despite physical and mental limitations that affect her ability to work." *Mascio*, 780 F.3d at 635 (quotation marks and citations omitted).

At step four, the ALJ determines whether, despite the severe impairment, the claimant retains the RFC to perform her past relevant work. 20 C.F.R. § 404.1520(e), (f). If the ALJ finds the claimant capable of performing her past relevant work, she is not disabled. *Id.* § 404.1520(f). If the requirements to perform the claimant's past relevant work exceed her RFC, then the ALJ goes on to the final step.

At step five, the burden of proof shifts to the Social Security Administration to show that the claimant can perform other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and RFC. *Id.* § 404.1520(g); *Mascio*, 780 F.3d at 634–35. Typically, the Commissioner offers this evidence through the testimony of a vocational expert answering hypotheticals that incorporate the claimant's limitations. *Mascio*, 780 F.3d at 635. "If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Id.*

## III. ADMINISTRATIVE FINDINGS

The ALJ employed the statutorily-required five-step sequential evaluation process to determine whether Plaintiff was disabled from March 15, 2020, through the date last insured of March 31, 2021. R.pp. 17–26. The ALJ found, in pertinent part:

> 1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2021.

> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 15, 2020 through her date last insured of March 31, 2021 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine, fibromyalgia, morbid obesity, bipolar disorder and anxiety disorder (20 CFR 404.1520(c)). . . .
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). . . .
>
> 5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) in that the claimant can lift/carry 10 pounds occasionally and 5 pounds frequently with standing and walking for two hours out of an eight hour work day and sitting for six hours of an eight hour work day; the claimant can never climb a ladder/rope/scaffold; the claimant can tolerate occasional stooping, kneeling, crouching, crawling and climbing a ramp or stairs; the claimant must avoid concentrated exposure to workplace hazards such as unprotected heights and moving machinery; the claimant can understand, remember and carry out simple instructions; the claimant can tolerate occasional interaction with the public. . . .
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565). . . .
>
> 7. The claimant was . . . 36 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a). . . .
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 15, 2020, the alleged onset date, through March 31, 2021, the date last insured (20 CFR 404.1520(g)).

R.pp. 19–25.

## IV. DISCUSSION

Plaintiff argues that remand is warranted for two reasons. First, she argues that the ALJ "failed to properly follow Social Security Ruling SSR 12–2p and the case law which expressly explain how to evaluate claims involving fibromyalgia." ECF No. 12 at 22–23. Second, Plaintiff asserts that the ALJ "failed to evaluate all of [Plaintiff's] impairments without adequate explanation," in that the ALJ failed to discuss Plaintiff's bilateral hearing loss despite Plaintiff reporting that it affected her ability to work. *Id.* at 23–25.

In response, the Commissioner argues that the ALJ's decision should be affirmed because the ALJ carefully considered the entire record, provided a discussion that allows for meaningful review, applied the correct law, and relied on substantial evidence to reach his determination that Plaintiff was not disabled. ECF No. 13.

Upon review, the undersigned finds that remand is warranted.

### A. Fibromyalgia

The Fourth Circuit has explained that fibromyalgia is "a disorder of unknown cause characterized by chronic widespread soft-tissue pain particularly in the neck, shoulders, back, and hips, which is aggravated by use of the affected muscles and accompanied by weakness, fatigue, and sleep disturbances." *Arakas v. Comm'r of Soc. Sec.*, 983 F.3d 83, 91 (4th Cir. 2020) (internal quotation marks and citation omitted). Social Security Ruling (SSR)[3] 12-2p governs the evaluation of fibromyalgia, and it explains that fibromyalgia is "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has

[3] Social Security Rulings, or "SSRs," are "interpretations by the Social Security Administration of the Social Security Act." *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995). They do not carry the force of law but are "binding on all components of the Social Security Administration," 20 C.F.R. § 402.35(b)(1), as well as on ALJs when they are adjudicating Social Security cases. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).

persisted for at least 3 months." *Titles II & Xvi: Evaluation of Fibromyalgia*, SSR 12- 2p, 2012 WL 3104869, at *2 (S.S.A. July 25, 2012). Courts have recognized that fibromyalgia "symptoms are entirely subjective," and "[t]here are no laboratory tests for the presence or severity of fibromyalgia." *Arakas*, 983 F.3d at 91 (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). Moreover, physical examinations usually yield normal results such as a full range of motion, no joint swelling, and normal muscle strength, and neurological reactions. *Id.* at 96.

SSR 12-2p provides criteria for the ALJ to use in determining, at Step 2 of the sequential evaluation, whether the plaintiff has a medical determinable impairment of fibromyalgia. *See* SSR 12-2p, 2012 WL 3104869, at *2–3. SSR 12-2p further states that while fibromyalgia is not a listed impairment, the ALJ determines, at Step 3, whether fibromyalgia "medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment." *Id.* at *6. SSR 12-2p provides that fibromyalgia should be considered in the RFC based on a longitudinal record whenever possible because symptoms can wax and wane such that a person may have "bad days and good days." *Id.* at *6 (further providing that widespread pain and other symptoms associated with fibromyalgia, such as fatigue, may result in exertional and non-exertional limitations).

On appeal, Plaintiff argues that the ALJ failed to properly follow SSR 12-2p and that the ALJ's decision does not show adequate consideration of Plaintiff's fibromyalgia. ECF No. 12 at 22–23. Plaintiff contends that the ALJ attempted to minimize Plaintiff's course of treatment and improperly cherry-picked notations of improvement, when the record does not support sustained improvement. *Id.*

At Step 2, the ALJ found that through the date last insured, Plaintiff had the severe medically determinable impairment of fibromyalgia, among other impairments. R.p. 19. At Step

3, the ALJ generally found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments," though the decision does not specifically discuss how the ALJ evaluated fibromyalgia at Step 3. R.pp. 20–21.

Then, in assessing the RFC, the ALJ provided the following discussion related to fibromyalgia:

> Regarding the claimant's fibromyalgia, the rheumatology notes show that she has been assessed with fibromyalgia and her rheumatoid arthritis testing came back negative. (8F/1-2). The claimant has reported joint pain at SMC Rehabilitation Services-YMCA in June 2022 for which she was not taking any medications but noted that heat, massage and lying down helped; she has not undergone any surgeries for the pain in 2022 and was attending physical therapy. (7F). She was on Lyrica in 2022 but stopped it as she didn't feel it was helping much; she reported that PT helped but her symptoms came back in 2 weeks. She was also on Seroquel as prescribed by her psychiatrist and Lexapro. She was told to take Flexeril as needed and was told to continue regular stretching and exercise. She was referred to pain management for back pain. (8F/2). She has also been on a Prednisone trial without significant response. (8F/4). The pain management records show that Gabapentin helped the claimant with tingling and numbness. (9F). The physical therapy records from August 2022 show that the claimant wanted to be discharged from therapy after she had a lot of improvement. (See 29F/12).
>
> In September 2022, the pain management records show that the claimant was assessed with chronic pain of multiple joints and was started at low-dose Tramadol and continued on Klonopin wean with psychiatry. (11F/5).

R.p. 22.

Although Plaintiff testified at the administrative hearing regarding her fibromyalgia, neither the ALJ's summary of her hearing testimony nor any other part of the decision references this testimony regarding fibromyalgia or the pain symptoms caused by her fibromyalgia. *Compare* R.pp. 47–48 (testifying that she has had symptoms of inflammatory arthritis and fibromyalgia "on and off" since she was around 18 years old, but she did not have health insurance until 2020 and could not go to a doctor; describing symptoms of back, arm, hands, and feet pain that is exacerbated by activity or by sitting in one position for too long; explaining how symptoms of fibromyalgia

impact her ability to perform activities of daily living) *with* R.p. 22 (noting Plaintiff's testimony that she has inflammatory arthritis).

After evaluating the medical opinions in the record, the ALJ provided the following explanation for the assessed RFC:

> Based on the foregoing, I find the claimant has the above residual functional capacity assessment, which is supported by the totality of the evidence showing a minimal spine disorder and improvement with medication and PT. The claimant's lumbar spine disorder, fibromyalgia, and morbid obesity have all been accounted for by limiting her to less than sedentary exertion with lifting and carrying 10 pounds occasionally and 5 pounds frequently with standing and walking for two hours of an eight hour work day and sitting for six hours of an eight hour work day); the claimant can never climb a ladder/rope/scaffold; the claimant can tolerate occasional stooping, kneeling, crouching, crawling and climbing a ramp or stairs; the claimant must avoid concentrated exposure to workplace hazards such as unprotected heights and moving machinery. The mental disorders are accounted for by limiting the claimant to understanding, remembering and carrying out simple instructions and tolerating occasional interaction with the public.

R.pp. 23–22.

Upon review, it is unclear whether the ALJ followed SSR 12-2p by considering fibromyalgia at all steps of the sequential evaluation process. Although the ALJ considered fibromyalgia at Step Two by finding it to be a severe impairment, R.p. 19, the ALJ's discussion is insufficient to show that he properly considered Plaintiff's fibromyalgia at the subsequent steps. For instance, the ALJ did not reference SSR 12-2p in his decision, and he did not discuss fibromyalgia at Step Three. *See* R.pp. 20–21. Moreover, although the ALJ states that he accounted for Plaintiff's fibromyalgia, along with her lumbar spine disorder and morbid obesity, in the RFC by limiting her to less-than-sedentary exertion, the limited discussion of fibromyalgia in the RFC assessment prevents meaningful appellate review of this finding.

For example, an RFC assessment must be based upon all the relevant evidence, including the individual's subjective allegations and description of her own limitations. 20 C.F.R. § 404.1546(a)(1). In the decision, the ALJ stated that Plaintiff's "statements about the intensity,

persistence, and limiting effects of his or her symptoms . . . are inconsistent because the records show minimal lumbar degenerative disc disease." R.p. 22. However, the Fourth Circuit has repeatedly held that "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Arakas*, 983 F.3d at 97; *see Hultz v. Bisignano*, 162 F.4th 111, 122 (4th Cir. 2025) (reaffirming its holding in *Arakas*). As noted above, the ALJ did not discuss any of Plaintiff's testimony concerning her fibromyalgia, and he provided no explanation as to why he found that Plaintiff's subjective complaints, including pain, about her fibromyalgia were not consistent with the evidence. Thus, it cannot be determined from the decision that the ALJ specifically considered Plaintiff's subjective complaints of fibromyalgia.

Additionally, in assessing the RFC, the ALJ must explain how any material inconsistencies or ambiguities in the record were resolved, SSR 96-8p, 1996 WL 374184 at *7, and he must "build an accurate and logical bridge from the evidence to his conclusions," *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). *See Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (explaining that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion"). Although the ALJ summarized records showing various treatments Plaintiff pursued to treat her fibromyalgia, R.p. 22, the ALJ does not provide any discussion building a logical bridge from this evidence to his RFC findings. Moreover, without further explanation, it is not clear that the cited evidence is inconsistent with Plaintiff's allegations of disabling pain, as the Fourth Circuit has explained that "off-and-on treatment and taking of medications, her occasional ability to engage in daily activity, and even her marked improvement on her other medical issues all remain consistent with

debilitating fibromyalgia symptoms." *Hultz*, 162 F.4th at 124.

For the district court to undertake meaningful review, the ALJ must sufficiently articulate his findings and "build an accurate and logical bridge" from the evidence to his conclusions. *Monroe*, 826 F.3d at 189 (further explaining that "a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence that ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence" (citation omitted)). Thus, a reviewing court is to consider both "whether the ALJ examined all relevant evidence" and whether the ALJ "offered a sufficient rationale in crediting certain evidence and discrediting other evidence." *Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 605 (4th Cir. 2025) (quoting *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023)). "The reason for this requirement, as in other administrative-law contexts, is that appellate *re*view is possible only when someone has first articulated a *view.*" *Drumgold*, 144 F.4th at 605 (citing *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662 (4th Cir. 2017)). Missing analysis "makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Accordingly, "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (internal quotation marks omitted).

Without further explanation from the ALJ regarding how he considered Plaintiff's fibromyalgia, reconciled any inconsistencies in the record, and reached his conclusions, the Court is unable to conduct meaningful appellate review of the ALJ's decision, such that remand is warranted. Thus, the undersigned recommends that this action be reversed and remanded to the

Commissioner to consider Plaintiff's fibromyalgia pursuant to SSR 12-2p in light of all the evidence, including her subjective complaints, and the applicable law.

**B. Hearing Loss**

Plaintiff also asserts that the ALJ erred by failing to discuss or consider her hearing loss at any point in the sequential evaluation. ECF No. 12 at 23–25.

In her application for DIB, Plaintiff alleged disability based, in part, on "moderate hearing loss in both ears." *See* R.pp. 63, 204. On initial review and upon reconsideration, the state agency physicians found that Plaintiff had a non-severe medically determinable impairment of hearing loss. R.pp. 66, 75. At the administrative hearing, Plaintiff testified that she has hearing aids in both ears and that she can "barely" hear without them. R.p. 47. Plaintiff's medical records show treatment for bilateral hearing loss. *See, e.g.*, R.pp. 327–30.

Notwithstanding this evidence, the ALJ's decision does not discuss Plaintiff's allegation of hearing loss at any step of the sequential evaluation process, except for noting that Plaintiff testified that she "has hearing aids in both ears." R.p. 22; *see generally* R.pp. 17–26.

Because the undersigned has determined that the errors in the ALJ's evaluation of Plaintiff's fibromyalgia warrant remand, the undersigned declines to further address this remaining claim of error. Upon remand, however, the ALJ should take such claims of error into consideration. With respect to any remaining claims of error, the ALJ will be able to reconsider and re-evaluate the evidence in toto as part of the reconsideration. *See Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763 n.3 (W.D. Va. 2002) (noting the ALJ's prior decision has no preclusive effect, as it is vacated, and the new hearing is conducted de novo).

## V. CONCLUSION

It is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative review.

The parties are referred to the Notice Page attached hereto.

Molly H. Cherry
United States Magistrate Judge

July 29, 2026
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).